UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTONIO NATHAN LAWS,

        Petitioner,

v.                                                        CASE NO. 06-10335
                                                           HONORABLE PAUL V. GADOLA

ANDREW JACKSON,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Antonio Nathan Laws has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's 2002 state convictions for murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony firearm). Petitioner asserts that he is incarcerated in violation of his rights under the Fourth and Sixth Amendments to the United States Constitution. For the reasons set forth below, Petitioner's Fourth Amendment claim is not cognizable on habeas review, and the state court's adjudication of his Sixth Amendment claim was objectively reasonable. Therefore, the habeas petition must be denied.

**I. Introduction**

Petitioner's convictions arose from the fatal shooting of Daniel Smith at a drug house on Schaefer Street in Detroit, Michigan. The evidence adduced at trial established that, between 1:30 a.m. and 2:00 a.m. on July 22, 2001, Petitioner gave $10.00 to "Dee," a crack cocaine user, to induce her to knock on the front door of 9410 Schaefer Street. Vera Hall testified that when Daniel Smith opened the doors to the house Petitioner shot Smith. Smith died from three gunshot wounds

sustained in the incident.

Petitioner was arrested at his girlfriend's home about five hours after the shooting. During a subsequent statement to the police, he admitted that he gave $10.00 to a "crackhead" to buy cocaine and that he started shooting when one of the occupants of the house on Schaefer Street opened the door. He claimed that the men who lived there had been harassing him and that he was just trying to protect his family. Petitioner's attorney moved to suppress Petitioner's statement to the police, but the trial court denied his motion after a lengthy hearing.

Petitioner's case proceeded to trial. At trial, Petitioner testified that he was not armed or even near the crime scene on July 22, 2001. He refuted the incriminating portions of his statement to the police and claimed that he had merely informed the police about his fistfight with Smith a week before the shooting. He denied killing anyone, and he claimed that the fistfight was the end of the matter.

On August 6, 2002, a Wayne County circuit court jury found Petitioner guilty, as charged, of first-degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and felony firearm, MICH. COMP. LAWS § 750.227b. On August 20, 2002, the trial court sentenced Petitioner to life imprisonment for the murder, to a concurrent term of twenty-two to sixty months for being a felon in possession of a firearm, and to a consecutive term of two years for the felony firearm conviction. Petitioner maintained his innocence at the sentencing, but thanked his trial attorney for doing a good job.

Petitioner subsequently filed a motion for new trial in which he claimed that the police lacked probable cause to arrest him. In a written opinion, the trial court concluded that the arrest was lawful and that Petitioner's clothing and the results of a gunshot residue test were properly

admitted in evidence.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal, citing "lack of merit in the grounds presented" as the reason. *See People v. Laws*, No. 252689 (Mich. Ct. App. May 4, 2004) (unpublished). On December 29, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Laws*, 471 Mich. 948; 690 N.W.2d 111 (2004) (table).

Petitioner filed his habeas corpus petition on January 25, 2006. He argues:

I. Entry into Petitioner's home and his concomitant arrest violated his constitutional right against unreasonable search and seizure; and both trail (sic) counsel were ineffective for failing to seek suppression of Petitioner's statement to police and other evidence based on asserting that the evidence was the fruit of an unlawful arrest.

II. Petitioner was deprived of his Sixth Amendment guarantee to effective assistance of counsel where his trial attorney[]s failed to properly seek suppression of evidence on the basis of the unlawful search and seizure.

In an answer to the habeas petition, Respondent maintains that Petitioner's Fourth Amendment claim is without merit and, therefore, his trial attorneys were not ineffective in failing to file a motion to suppress Petitioner's confession on the theory that Petitioner's arrest was unlawful.

## II. Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

3

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

4

## III. Discussion

### A. The Fourth Amendment Claim

Petitioner asserts that the entry into his home and the subsequent arrest violated his constitutional right not to be subject to unreasonable searches and seizures. He asserts that the trial court should have suppressed his confession and certain other evidence as fruits of the illegal arrest.

The Supreme Court has stated that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). Petitioner filed a pretrial motion to suppress evidence, which the trial court adjudicated after conducting a lengthy evidentiary hearing on the motion. Petitioner filed a second pretrial motion to suppress, which a different judge addressed and denied. Following trial, Petitioner raised a Fourth Amendment issue in a motion for new trial, which the trial court denied in a reasoned opinion. Petitioner also raised the issue on appeal. The Michigan Court of Appeals found no merit in the claim, and the Michigan Supreme Court was not persuaded to review the issue.

After a review of these events, the Court concludes that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims. Therefore, the Fourth Amendment issues are not cognizable on habeas review. *Stone v. Powell*, 428 U.S. at 482.

### B. The Sixth Amendment Claim

Petitioner's only other claim alleges that his trial attorneys were ineffective for failing to seek suppression of his statement to the police and other evidence on the basis that the evidence was the fruit of an unlawful arrest. Defense attorney Arthur Lee Morman moved to suppress Petitioner's

statement on the ground that Petitioner's statement was involuntary. Mr. Morman attempted to argue at the *Walker* hearing[1] that Petitioner's statement to the police was the product of an illegal arrest because the police lacked probable cause to arrest him. Wayne County Circuit Judge Deborah A. Thomas stated that the probable cause issue was not pending before her because the issue was not raised in the motion to suppress. (Tr. Jan. 25, 2002, at 9-10 and 65-67.) However, at the close of the hearing, Judge Thomas ruled that there was probable cause to make the arrest because an eyewitness had told the police where to find Petitioner. Judge Thomas also determined that Petitioner's statement was voluntarily made. (Tr. Feb. 12, 2002, at 54-56.)

Mr. Morman filed a subsequent motion to suppress the results of a gunshot residue test and other physical evidence. Wayne County Circuit Judge Thomas W. Brookover denied the motion because the legality of the arrest had already been determined by Judge Thomas. (Tr. Feb. 15, 2002, at 5-6.)

Mr. Morman subsequently became ill and died. Attorney W. Frederick Moore represented Petitioner at trial. Petitioner asserts that Mr. Moore should have challenged the rulings made by Judges Thomas and Brookover and that both of his former attorneys should have argued that the police lacked consent or some other basis for entering his home. Petitioner correctly notes that Judge Thomas did not address that issue.

### 1. Supreme Court Precedent

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the

---

[1] In Michigan, a hearing on the voluntariness of a confession is known as a *Walker* hearing. *See People v. Walker*, (on rehearing), 374 Mich. 331; 132 NW2d 87 (1965).

defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

### 2. Probable Cause to Arrest

Petitioner contends that his arrest and the seizure of evidence were accomplished without a warrant and without probable cause or some exception to the warrant requirement. "The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions." *Id.* (quoting *Thompson v.*

7

*Louisiana* 469 U.S. 17, 19-20 (1984)) (quotation marks omitted). The reasonableness of a search and seizure are not in doubt where there is probable cause to believe that a suspect committed an offense. *Whren v. United States*, 517 U.S. 806, 817-19 (1996). The exclusionary rule generally bars the admission at trial of physical and tangible evidence obtained as a direct result of an unlawful entry onto premises or an unauthorized arrest. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

The police admitted at Petitioner's *Walker* hearing that they did not have a warrant for Petitioner's arrest. (Tr. Jan. 25, 2002, at 82.) The question therefore is whether they had probable cause to arrest Petitioner. "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

### a. The Facts

Sergeant Walter Bates of the Detroit Police Department testified at the *Walker* hearing that an eyewitness observed the shooting and was able to provide details about it. The eyewitness knew the shooter and was able to point out the house where he lived. (Tr. Jan. 25, 2002, at 62, 68.) The eyewitness was Vera Hall, who spoke with the police at 2:15 a.m. and 3:30 a.m. on July 22, 2001. Petitioner's arrest occurred a few hours later at 6:45 a.m. (*Id*. at 23, 77-79.)

Drug Enforcement Administration Special Agent Edward Donovan confirmed that approximately two hours after the shooting the Detroit police received information about the suspect from an eyewitness. The police also learned that the suspect might be staying at his girlfriend's house, which was located a few blocks away. (Tr. Jan. 28, 2002, at 81-84.) Sergeant Edward

8

Viverette of the Michigan State Police concurred that the identity of the shooter and Petitioner's arrest were based on information given to the police by an eyewitness to the shooting. (*Id.* at 103-04.) When the police looked inside the house pointed out to them by the eyewitness, they saw Petitioner asleep next to a stack of clothes, which fit the description given of the shooter's clothes. (Tr. Jan. 31, 2002, at 13-14.)

### b. The Eyewitness

Despite this testimony, Petitioner contends that the police relied on untrustworthy information about the shooting from Antoine Pollard, Vera Hall, and Renolda Rogers. However, the testimony at the *Walker* hearing indicates that the police relied solely on Vera Hall's statements to support a finding of probable cause to arrest Petitioner.

Petitioner claims that Hall's statements were too vague and untested to support a finding of probable cause. While it is true that Hall initially informed the police that she did not know the suspect and that he was wearing a mask, she explained at trial that she lied initially because she feared for her life. She ultimately informed the police that the shooter's name was "Tone" and that he lived on Carlin Street.

### c. Conclusion

There was sufficient reliable evidence for the police to conclude that Petitioner committed the shooting. An eyewitness to the shooting claimed to know him and was able to point out an address where she thought he might be staying. Petitioner was observed at that address lying next to clothing that matched the description of the shooter's clothing. Therefore, because the facts of the case reasonably led the police to believe an offense had been committed, the police had probable cause to validly arrest Petitioner. *See Whren*, 517 U.S. at 817-19; *Brinegar*, 338 U.S. at 175-76.

9

### 3. Consent

Petitioner also contends that the police lacked consent to enter the house where he was found. According to Petitioner, the identity of the person who answered the door to the house where he was arrested is still unclear.

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. *Payton v. New York*, 445 U.S. 573 (1980); *Johnson v. United States*, 333 U.S. 10 (1948). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, *see Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), or from a third party who possesses common authority over the premises, see *United States v. Matlock*, [415 U.S. 164, 171 (1974) . . . .
>
> As . . . stated in *Matlock supra*, at 171, n.7, "[c]ommon authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes . . . ."

*Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *but see Georgia v. Randolph*, 547 U.S. 103, 120 (2006) (holding "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident").

Police Officer Arlie Lovier wrote in his preliminary complaint report that the police were admitted to the house where Petitioner was arrested by Mary Purifoy, who was the owner of the premises. *See* Pet. for Writ of Habeas Corpus, App. B. According to the trial court, DEA agent Edward Donovan also stated in a police report that the owner of the house granted permission to enter the residence. *See* Pet. for Writ of Habeas Corpus, App. E, at 2. Petitioner nevertheless contends that it is still not clear who answered the door or who Mary Purifoy is. Exhibits to his reply brief suggest that the real owner of the premises was Annie Dunham or Dunwoody.

Petitioner's girlfriend testified at trial that her mother, aunt, and children were staying with

her when the police arrived about 7:00 a.m. on a Sunday morning. She thought that her mother may have answered the door. (Tr. July 30, 2002, at 146-47.) Petitioner testified that he lived in the house, and he thought that his mother-in-law (presumably, his girlfriend's mother) answered the door. (Tr. Aug. 1, 2002, at 67, 78.) Sergeant Edward Viverette testified at the *Walker* hearing that the police were granted permission to enter the house by the woman who answered the door. (Tr. Jan. 31, 2002, at 35.)

The facts available to the police were sufficient for a reasonable person to conclude that the woman who answered the door either owned the property or had mutual use of it and possessed authority to admit the police. Even if the police erroneously believed that the woman owned the property, the Fourth Amendment was not violated because the police reasonably believed that she had authority over the premises. *Rodriguez*, 497 U.S. at 186. Thus, their presence in the home was legal.

### 4. Summary

Petitioner's Fourth Amendment claims that the police lacked probable cause to arrest him and lacked consent to enter his home were not clearly meritorious claims. Therefore, his attorneys' omissions did not amount to deficient performance.

Petitioner's confession would have been admissible even if the trial court had concluded that the police lacked consent to enter his home. When the police have probable cause to arrest a suspect, as they did here, "the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*." *Harris v. New York*, 495 U.S. 14 (1990). There is not a reasonable probability that the verdict would have been different absent the other contested evidence

11

(Petitioner's clothing and the results of a gunshot residue test) in light of Vera Hall's eyewitness testimony that Petitioner shot Daniel Smith. Consequently, Petitioner has failed to show that his attorneys' omissions prejudiced the defense.

## IV. Conclusion

The decision of the Michigan Court of Appeals that Petitioner's claims lacked merit did not result in an unreasonable determination of the facts. The state court's decision also did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Accordingly, **IT IS HEREBY ORDERED AND ADJUDGED** that the Petition for a Writ of Habeas Corpus [docket entry #1] is **DENIED**.

**SO ORDERED.**

Dated: February 26, 2008          s/Paul V. Gadola
                                  HONORABLE PAUL V. GADOLA
                                  UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on February 26, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Laura A. Cook, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Antonio Laws.

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845